# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

Jenna Amacher, ) Case No: 1:21-cv-285
) McDonough/Lee
**PETITIONER,** )
)
V. )
)
Trey Adcock; )
Jennifer Craighead; )
City of Manchester; )
[redacted] )
)
**RESPONDENT,**

FILED
NOV 19 2021
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

## COMPLAINT

Comes now the Plaintiff, **JENNA R. AMACHER**, would respectfully plead and claim unto this Honorable Court the following: This complaint is filed pursuant to 42 USC 1983 commonly known as a civil rights action.

1. The Plaintiff is a resident of Coffee County, TN.
2. The defendant Trey Adcock is an employee of the city of Manchester, TN in the capacity of a police officer. Manchester is a municipal corporation under the laws of Tennessee.
3. The defendant Jennifer Craighead is an employee of the State of Tennessee in the capacity of an Assistant Attorney General in the 14th judicial district.
4. The allegations in this complaint transpired in Coffee County, TN.
5. On November 18, 2020, the Plaintiff became aware that a facebook video was posted by an individual on Facebook that had both audio and video of the Plaintiff in a conversation that took place in a visit at the Coffee County Jail.
6. The Plaintiff made visits to the jail to meet with Waymond Brian Riddle, the father of her child.

7. The Plaintiff made these visits in order to maintain communication with her child's father to promote the material best interest of the child. The purpose being a prospective positive reunification between father and child after his release.
8. The Plaintiff does not have a criminal record nor has she or the inmate, Mr. Riddle, been under the jurisdiction of Manchester City, or Officer Adcock's department. Mr. Riddle had specific district attorneys assigned to his charges and he was arrested in another jurisdiction. Ms. Craighead was not assigned to his case in her capacity as assistant district attorney.
9. During an approximately twenty minute conversation on March 3, 2020 in a video visitation, the Plaintiff used the word "nigga" which must be taken into context with the entire conversation. Both plaintiff and Mr. Riddle are caucasian.
10. Unknown to the Plaintiff at the time, the Defendants, Trey Adcock and Jennifer Craighead both accessed this video using their governmental authority, position, resources, and issued equipment. Subsequently, one or both of these state actors took a personal cell phone video of the Plaintiff using this common cultural expression and then published said video, thereby abusing their discretionary authority and position by maliciously co-conspiring to defame the Plaintiff under of color of law
11. The Defendants Trey Adcock and Jennifer Craighead individually and through their employer abused the process of obtaining and releasing personal conversations of the Plaintiff. The abuse of process lies in the fact that they did not go through the proper channels for publishing the private information and accessed such information under color of law. A person "acts under color of state law when he abuses the position given to him by the state."West v. Atkins, 487 U.S. 42, 49 (1988)
12. Both individual Defendants intentionally inflicted mental anguish and invaded the Plaintiff's privacy.
13. The Defendants did not view the visitation under the pretense of any investigatory authority or reasonable purpose.
14. The Plaintiff only became aware of this action taken by these individuals when the video was posted to Facebook and then sent to her via Facebook Messenger

by a colleague on November 20, 2020.. The poster on facebook had inscribed on the post of the video identifying the Plaintiff as an Alderman of the City of Tullahoma.

15. The Plaintiff was elected in August of 2020 to the Board of Mayor and Alderman, approximately 5 months after this visit had taken place.
16. Following the posting to Facebook, an internet mob gathered against the Plaintiff. The radical group of Black Lives Matter and leftist operatives called for her resignation as a Tullahoma Alderman.
17. As a result of this infringement and publishing by a state actor, the Plaintiff's civil rights have been violated.
18. The internet campaign unleashed was vicious and demeaning and caused harm to the Plaintiffs reputation that was foreseeable by the state actors.
19. Family pictures of a Christmas party were subsequently used in an attempt to smear the Plaintiff further.Plaintiff contends the heightened publicity surrounding the photos were a result of the prior initiation of heightened scrutiny by the Defendants intentional and negligent misrepresentation as well as malicious infliction of emotional distress.
20. Public speakers attended city board meetings and denounced the Plaintiff as a "racist" as well as potentially created a threat of violence in a charged atmosphere with the threat of a "forced" removal.
21. The proximate cause of all of the defamation, false light, emotional distress, and mental anguish is a direct result of the defendants', i.e. state actors', conduct.
22. The Defendants violated the Plaintiff's right to privacy by exceeding the scope of their authority by the publishing of her conversation that was of a private family nature.
23. The Plaintiff has the right to privacy under the U.S. Constitution as described in Griswold v. Connecticut (cite). State actors violated her civil rights under color of authority 28 USC 1983.
24. In *West v. Media General Convergence, Inc., 53 S.W.3d 640 (Tenn. 2001)* the court adopted the definition set out in Section 652E of the Restatement (Second) of Torts (1977):

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Although the Restatement talks in terms of "falsity" and "false light" the truth of the facts published is not an absolute defense to a false light claim. The Court in West said: "The facts may be true in a false light claim. However, the angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light. Literal accuracy of separate statements will not render a communication true where the implication of the communication as a whole was false . . . . The question is whether [the defendant] made discrete presentations of information in a fashion which rendered the publication susceptible to inferences casting [the plaintiff] in a false light. . Therefore, the literal truth of the publicized facts is not a defense in a false light case. 53 S.W.3d 640, 645, ftn. 5. To achieve the proper balance between First Amendment and privacy interests, the court held that the plaintiff must prove that the defendants acted with actual malice if the plaintiff is a public official or a public figure, or if the claim is asserted by a private individual about a matter of public concern. Id. at 647.

25. In addition to the federal statute violated, the Plaintiff incorporates into the suit the Tennessee Governmental Tort Liability Act, TCA 29-20-101. The Defendants Adcock and Craighead are sued in their individual and official capacities.
26. The Plaintiff, in addition to the above actions, alleges that the Defendants by their conduct proximately caused the Plaintiff to be placed in a false light due to the Defendant's release of official information and actions were concerted with actual malice.
27. The Defendants deliberate indifference with respect to their malicious and intentional violations inflicted emotional distress on the Plaintiff.
28. The culpability of the City of Manchester lies in the fact that they failed eo exercise supervision of their employees and failed to provide adequate training,

safeguards, and standard operating procedures for handling sensitive information.The Plaintiff contends such lack of oversight amounts to gross negligence.

29. The Defendants defamed the Plaintiff by publishing the official information on Facebook and therefore committed the tort of false light invasion of privacy.

30. The Defendants actions amount to official misconduct and violate T.C.A 39-16-402- Official misconduct as is outlined below:

*(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:*

*(1) Commits an act relating to the servant's office or employment that constitutes an unauthorized exercise of official power;*

*(2) Commits an act under color of office or employment that exceeds the servant's official power;*

*(4) Violates a law relating to the public servant's office or employment; or*

*(b) For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity or takes advantage of the actual or purported capacity.*

31. The Plaintiff obtained the downloaded information which identified the Defendants with a Freedom of Information Act Request to the Coffee County Sheriff's department on November 19, 2020 after seeing the video on November 18, 2020.

Dated this 19th day of November, 2021

Jenna R. Amacher, Pro Se

amacher.47tn@gmail.com

Exhibit 1

## Affidavit of Jenna Amacher

After being duly sworn the affiant makes the following declaration:

1. I am an elected City Alderman in Tullahoma, which is located in Coffee County, TN. I was elected in a non-partisan race during the August 2020 general election.
2. In Coffee County, the organized political parties must submit a written request to conduct primary elections. The County Election Commission then sets the date for the primaries.
3. I certify that the attached exhibit is an exact copy of the FOIA information received through email by Mrt. Frank Watkins at the Coffee County Sheriff's Department.

Date: November 19, 2021

Jenna Amacher

Affiant

Gmail                                                    Jenna Amacher <amacher.47tn@gmail.com>

---

# FOIA Rquest

---

**Frank Watkins** <fwatkins@coffeecountytn.gov>                     Thu, Nov 19, 2020 at 12:49 PM
To: amacher.47tn@gmail.com

Here is the response to your FOIA request.

--
Frank C. Watkins
Chief Deputy
Coffee County Sheriff's Department
76 County Jail Lane
Manchester, TN 37355
931-570-4407 (Office)
931-723-5149 (Fax)

***********************************************************
This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. It is not an offer or acceptance, and it is not intended to be all or part of an agreement. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any review, use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by return e-mail and delete this e-mail from your system. The sender does not accept liability for any damage caused by any virus transmitted by this e-mail or any errors or omissions in the contents of this message which arise as a result of e-mail transmission. *****************************
*****************************

---

**Jenna Amacher Request.pdf**
84K



2

**COFFEE COUNTY SHERIFF'S DEPARTMENT**

*Chad H. Partin, Sheriff*

76 County Jail Lane, Manchester, TN 37355

Main (931) 728-3591 FAX (931)723-5149 Com. Center (931) 728-9555

To: Jenna Amacher

From: Frank C. Watkins
Chief Deputy

Re: FOIA Request

Dear. Ms. Amacher

Per your FOIA request I am responding to your request with the following information obtained from our records. According to the visitation system two visits were conducted on March 3, 2020. One visit, Visit ID 49476, was scheduled at 10:00:00 and started at 10:06:00 with a duration of 19:00 and ended at 10:25:00. The second visit, Visit ID 49478, was scheduled at 10:30:00 started at 10:30:00 with a duration of 25:02 and ended at 10:55:00. Both visits were between Jenna Amacher and Waymond Riddle according to the records. According to the records user tadcock viewed Visit ID 49476 on 3/3/20 at 11:51:23 until 3/3/20 at 11:52:48 for a total of 1 minute 25 seconds. The same visit was viewed by user jrcraighead on 3/3/20 at 12:01:55 until 3/3/20 at 12:17:33 for a total of 15 minutes 38 seconds. Visit ID 49478 was viewed on 3/3/20 by user tadcock from 11:44:11 until 11:44:21 for a total of 10 seconds. If you have any further questions feel free to contact me.

Frank C. Watkins
Chief Deputy